**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Rife, | No. CV-19-04689-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Randolf Ezrre Wholesale Auto Sales LLC, et al., | |
| Defendants. | |

On January 13, 2022, the Court held a bench trial in this matter. Below are the Court's findings of fact and conclusions of law.

**I.     Findings of Fact**

1. Alpha and Omega Auto Sales LLC is wholly owned by Tiffany Wade.
2. Defendant Joshua Russell Moyano is married to Wade.
3. In 2018, Moyano worked for Alpha and Omega and Wade.
4. In March 2018, Moyano sold a 2007 Cadillac Escalade to Plaintiff Anthony Rife.
5. Rife learned about the Escalade through the on-line app Craigslist.com.
6. Rife called the phone number listed in the Craigslist advertisement.
7. Rife set up an appointment to inspect and test drive the Escalade at the parking lot of an AutoZone store in Avondale, Arizona.
8. Rife met with Moyano to inspect the Escalade.
9. Moyano showed Rife all the options on the Escalade and represented to him that the

vehicle was in good shape.

10. Moyano also represented to Rife that the Escalade had a new engine and was in good mechanical condition.

11. Moyano never told Rife that the odometer reading on the Escalade was not actual miles.

12. Rife attempted to negotiate the asking price of $15,000, but Moyano would not take less, telling Rife that was the amount of the money he had put into the vehicle.

13. Relying upon the representations made by Moyano, including the representations that the odometer reading on the Escalade was actual miles, Rife agreed to pay $15,000 to purchase the Escalade.

14. Rife and Moyano traveled in the Escalade to a shopping center selected by Moyano where a third-party MVD store and a Wells Fargo Bank were located.

15. While Rife went to the Wells Fargo Bank to get the $15,000, Moyano went to the MVD store.

16. Moyano told Rife to withdraw money in addition to the $15,000 to pay the licensing and registration fees on the Escalade.

17. They both went back to the MVD store where they exchanged the money and the title to the Escalade.

18. While at the counter, Rife completed the Title and Registration Application for the Escalade.

19. Moyano completed and signed the back of the title transferring ownership to Rife.

20. Moyano also completed the odometer statement on the back of the title certifying that the odometer reading was 135,740 actual miles, which was false.

21. On the face of the title, the mileage was listed as "135,740 B," meaning that the odometer reading was in excess of its mechanical limits, or that the odometer reading was not accurate.

22. Moyano did not show the title to Rife until it was turned on the back side to be signed.

23. Before completing the purchase of the vehicle, Rife did not see the front page of the title.
24. The Secure Odometer Statement included in Moyano's Answer, Exhibit 5 pg. 14 of 15, was not provided to Rife, and the signature purporting to be his signature is not his.
25. Moyano personally and falsely represented the mileage on the Escalade to be 135,740 actual miles, when the previous title showed that the mileage was 184,431.
26. Moyano personally and falsely represented that the odometer reading was actual miles, when he knew the title had been branded to indicate the odometer reading was not actual.
27. Moyano's false representations concerning the odometer mileage to Rife were made with the intent to defraud Rife.
28. In 2019, Rife attempted to trade in the Escalade at several dealerships, none of which would take it due to problems with the title.
29. Rife eventually took it to a buy-here pay-here dealership, which told him there was an issue with the title and showed him a CarFax vehicle history report revealing that the mileage prior to him purchasing the Escalade was 184,431 miles.
30. As a result of Moyano's actions, Rife was damaged in the amount of $12,000, the difference between what he paid for the Escalade and what it was worth.
31. Moyano knew that the odometer disclosure provided to Rife was false.
32. Moyano knew that Rife would rely on the odometer certifications and representations provided to him.
33. Rife in fact relied upon the representations concerning the odometer reading and the mileage provided by Moyano in deciding to purchase the Escalade.
34. Rife would not have purchased the Escalade had he known that the odometer had been altered and that the odometer did not reflect the actual miles.
35. Rife would not have purchased the Escalade had he known that the title to the Escalade was branded as a "Box B" vehicle, meaning not actual mileage.

36. Rife would not have purchased the Escalade knowing it had more than 184,431 miles at the time he purchased it.
37. Due to the branded title, and the rollback, the Escalade at the time Rife purchased it was worth no more than $3,000.
38. Rife has been damaged in the amount of $12,000 because of Moyano's violations of the Odometer Act.

## II. Conclusions of Law

1. Congress passed the Odometer Act in 1972, amended it in 1976, 1986, 1988, 1990, and 1998, and recodified it in 1994. Congress' intent in passing the Act was to prevent odometer tampering, and to provide other general safeguards for the protection of consumers. 49 U.S.C. § 32701. Being a remedial statute, the Act is to be broadly construed in order to effectuate its consumer protection purposes. *Hughs v. Box*, 814 F.2d 498, 501 (8th Cir. 1987).
2. The Odometer Act has five substantive provisions relating to odometers:
    a. The Act prohibits odometer tampering.
    b. The Act establishes procedures to follow when a motor vehicle repair results in a change in the odometer reading.
    c. The Act requires, each time a vehicle is transferred, that the transferor disclose the odometer reading and whether the odometer reading is accurate, has exceeded its mechanical limits, or is inaccurate.
    d. The Act prohibits false statements in conjunction with the disclosures.
    e. The Act prohibits parties from conspiring to violate any of the Act's provisions.
3. A person transferring ownership of a motor vehicle shall give the buyer a specific written disclosure concerning the odometer mileage. The written disclosure must be signed by the transferor and transferee, and among other statements must include "(1) the odometer reading at the time of transfer. . ." and "the transferor's certification that 'to the best of his knowledge the odometer reading reflects the

actual mileage; (2) the odometer reading reflects the amount of mileage in excess of the designated mechanical odometer limit'; or (3) the odometer reading does not reflect the actual mileage, and should not be relied upon." *Shaghoian v. Aghajani*, 228 F. Supp. 2d 1107, 1111 (C.D. Cal. 2002) (quoting 49 C.F.R. § 580.5).

4. A person transferring ownership of a motor vehicle may not give a false statement to the transferee in making this disclosure. 49 U.S.C. § 32705(a)(2). Disclosure of the vehicle's cumulative mileage must be made to the transferee in writing on the title. 49 C.F.R. § 580.5(c). Exempted from this disclosure requirement are vehicles "manufactured in or before the 2010 model year that [are] transferred at least 10 years after January 1 of the calendar year corresponding to its designated model year." 49 C.F.R. § 580.17(a)(3)(i). "The net effect of these provisions and regulations is that a person or entity transferring ownership of a motor vehicle must disclose the odometer mileage in writing on the title, but 'need not' make such a disclosure if the vehicle was manufactured at least ten years before the calendar year of the transfer." *Moxey v. Jimmy Auto Sale LLC*, No. CV174731ESJAD, 2019 WL 1399556, at *4 (D.N.J. Mar. 28, 2019) (citing 49 U.S.C. § 32705(a)(2) & quoting 49 C.F.R. § 580.17(a)(3)).

5. This language clearly only excuses transferors from disclosing the mileage and does not give them permission to make false disclosures. This is especially true in light of the Odometer Act's purposes of preventing odometer tampering and odometer fraud. *See Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318, 1322 (11th Cir. 2005) (citing 49 U.S.C. § 32701 (2000)). The exemption provided by 49 C.F.R. § 580.17(a)(3) does not provide a license to make false statements. *See McEwen v. Delong,* No. CV-19-05192-PHX-SMB, 2021 WL 2635459 (D. Ariz. June 25, 2021).

6. A person who transfers ownership of a motor vehicle may not violate a regulation prescribed under the Odometer Act or give a false statement to the transferee in making the required disclosure. 49 U.S.C. § 32705.

7. The Odometer Act allows a civil action against "[a] person who violates this chapter

. . . with intent to defraud[.]" 49 U.S.C. § 32710; *see also Bodine v. Graco, Inc.*, 533 F.3d 1145 (9th Cir. 2008). "A transferor may be found to have intended to defraud if he had reason to know the mileage on the vehicle was more than was reflected by the odometer or certification of the previous owner, and nevertheless failed to take reasonable steps to determine the actual mileage." *Haynes v. Manning*, 917 F.2d 450, 453 (10th Cir. 1990); s*ee also Rogers Motors of Herminston LLC. v. Bartlett LLC*, No. 2:17-CV-00338-SMJ, 2018 WL 616138, at *3 (E.D. Wa. Jan. 29, 2018). An intent to defraud can be inferred "where the seller exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements." *Tusa v. Omaha Auto Auction Inc.*, 712 F.2d 1248, 1253 (8th Cir. 1983). A plaintiff must prove the intent to defraud by a preponderance of the evidence. *Landrum v. T.C. Goddard*, 921 F.2d 61, 62-63 (5th Cir. 1991).

8. When a dealer has received information indicating that the odometer has exceeded the mechanical limits or the mileage reading is inaccurate, an intent to defraud can be inferred when the dealer's disclosure indicates the odometer reading is accurate. *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D. La. 1987); *Jones v. Fenton Ford, Inc.*, 427 F. Supp. 1328 (D. Conn. 1977); *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955 (Ind. Ct. App. 2000). Intent to defraud can also be inferred from a dealer's failure to take basic steps to investigate the accuracy of the odometer. A "transferor may not close his eyes to the truth." *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978); *see also Bolton v. Tyler Lincoln Mercury, Inc.*, 587 F.2d 796 (5th Cir. 1979).

9. The Odometer Act's provisions apply to all "persons." The term person includes "corporations, companies, associations, firms, partnerships, societies, joint stock companies and individuals."[1] The term also includes owners, employees, or agents of car dealers. *See Rowan v. Max Auto Mall, Inc.*, No. 01 C 3648, 2002 WL 215524 (N.D. Ill. Feb. 12, 2002). Any human being or business entity that violates any

---

[1] The word "person" is defined for all remedial statutes in 1 U.S.C. § 1.

1     section of the Act may be held liable.

2. 10. Any person who violates the Odometer Act, with intent to defraud, is liable for three times the actual damages or $10,000, whichever is greater. 49 U.S.C. § 32710(a) and (b).

11. Buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of the vehicle. 49 U.S.C. § 32701(a)(1).

12. Buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle. 49 U.S.C. § 32701(a)(2).

13. An accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle. 49 U.S.C. § 32701(a)(3).

14. "Transferor means any person who transfers ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor." 49 C.F.R. § 580.3.

15. Moyano is a transferor under the Act.

16. "Transferee means any person to whom ownership of a motor vehicle is transferred, by purchase, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferee." 49 C.F.R. § 580.3.

17. Rife is a "transferee" under the Act.

18. Moyano is liable for the illegal actions taken by him on behalf of Alpha and Omega.

19. Moyano is liable for personally providing false representations concerning the odometer to Rife.

20. Moyano falsely represented that the mileage on the Escalade was 135,740 miles with the intent that a purchaser such as Rife rely upon such representation. 49 U.S.C. § 32705(a)(2).

21. Moyano falsely represented that the mileage on the Escalade was 135,740 actual miles on the Title. (Exhibit 2.)

22. Moyano's misrepresentations that the Escalade had 135,740 actual miles was done with the intent to defraud Rife.
23. Moyano's violations of the Odometer Act caused Rife to suffer actual damages in the amount of $12,000, the difference in the purchase price of $15,000 for the Escalade, compared to its actual condition and mileage of $3,000.
24. Statutory damages under the Odometer Act are determined by trebling the actual damages, or $10,000, whichever is greater.
25. Rife is entitled to an award of statutory damages under the Act against Moyano in the amount of $36,000.
26. Rife is entitled to an award of court costs and reasonable attorney's fees in an amount to be determined. 49 U.S.C. 32710(b).

**IT IS ORDERED** that Counsel for Plaintiff shall submit a proposed form of judgment in accordance with the Findings of Fact and Conclusions of Law herein within **14 days** of the date of this order.

Dated this 7th day of February, 2022.

Douglas L. Rayes
United States District Judge